IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Shellie Bennett, | ) |
| | ) |
| Plaintiff, | ) C/A No. 5:10-1600-MBS |
| | ) |
| v. | ) |
| | ) |
| American Hallmark Insurance Co. | ) **ORDER AND OPINION** |
| of Texas, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Shellie Bennett filed the within action in the Orangeburg County Court of Common Pleas on May 27, 2010 against Defendant American Hallmark Insurance Company of Texas. *See* Compl. On June 22, 2010, Defendant removed this action to federal court. Entry 1. On October 21, 2010, after receiving leave from the court, Plaintiff filed an amended complaint against Defendant, alleging three causes of action: 1) breach of contract; 2) bad faith refusal to pay benefits under an insurance contract; and 3) negligence through acts of agent. Entry 24. On October 29, 2010, Defendant answered the amended complaint and made a counterclaim seeking a declaratory judgment that the insurance policy at issue is void *ab initio*.

This matter is before the court on Defendant's motion for summary judgment, which was filed on February 18, 2011. On March 7, 2011, Plaintiff responded and on March 17, 2011, Defendant replied. On June 3, 2011, the court held a hearing on Defendant's motion for summary judgment.

**FACTS**

The facts in the light most favorable to Plaintiff are as follow. On January 4, 2010, Plaintiff met with Hercules Johnson ("Johnson"), an agent of Edisto Insurance Agency and Defendant, to

complete an application for homeowners insurance. Johnson filled out the application on a computer and asked Plaintiff questions during the process. *See* Pl. Dep., Dec. 9, 2010, 73:22-25; Entry 37-15 at 4, Johnson Aff., Dec. 9, 2010, ¶ 6. After the application was completed, it was printed out and Plaintiff signed it. *See* Entry 37-2 at 3, Insurance Application. Just above the signature line, the insurance application states:

> **THESE STATEMENTS** are accurate and true to the best of my knowledge. The Company may rely upon them in the Issuance of this policy. I understand that the policy may be voided if I have made, with intent to deceive, any statements material to the issuance of this policy.
>
> **I UNDERSTAND** that if the forgoing statements are discovered to be untrue or if information is not disclosed, the policy for which I am applying may be declined, canceled, or coverage rescinded.
>
> . . . .
>
> **IT IS A CRIME** to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

*Id.* Plaintiff's completed and signed insurance application indicates that Plaintiff was not unemployed. Entry 37-2 at 2, Insurance Application.

Plaintiff was issued homeowners insurance policy number 339-100309-00 (the "Policy"), which insured Plaintiff's home at 1526 Providence Rd., Orangeburg, SC 29118. Section I, of the policy, which deals with conditions of coverage, states:

> **Q.   Concealment or Fraud**
> We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
> 2. Engaged in fraudulent conduct; or
> 3. Made false statements;
> relating to this insurance.

Entry 37-11 at 18.

On April 7, 2010, Plaintiff's home and its contents were destroyed by a fire. Amend. Compl. ¶ III. Plaintiff subsequently made a claim pursuant to the Policy. On April 19, 2010, Jessica Harper ("Harper"), a claims adjuster for Defendant, spoke to Plaintiff over the phone about his insurance claim. Entry 37-5 at 2, Aff. of Harper ¶ 5. Harper states that during the conversation, Plaintiff stated that he had been unemployed for at least one year. *Id.* That same day, Plaintiff completed an Affidavit of Property Fire in which he indicated that he was unemployed, but had been formerly employed by "Career Personnel - Dayco." Entry 37-7 at 2, Affidavit of Property Fire. On April 22, 2010, Harper again spoke with Plaintiff, who stated that he had been receiving unemployment benefits until recently when the benefits had been exhausted. Entry 37-5 at 2, Aff. of Harper ¶ 6. By letter dated April 22, 2010, Harper requested more information from Plaintiff. Entry 37-14 at 2. In pertinent part, Harper asked for proof of Plaintiff's unemployment benefits including the length of time and dates that he was unemployed. *Id.* In response to Harper's request, Plaintiff produced two unemployment benefits applications dated December 17, 2009 and February 24, 2010, indicating that Plaintiff was unemployed at the time he applied for insurance. Entry 37-13 at 3-4. By letter dated May 10, 2010, Plaintiff was informed that Defendant had determined that Plaintiff was not entitled to coverage for his loss because Plaintiff's insurance application falsely indicated that he was "not unemployed." Entry 37-12 at 2. Plaintiff admits that at all times relevant to this action he "was and remains unemployed." Entry 37-4 at 3; *see also* Entry 38 at 1.

Defendant's underwriting guidelines state that "ineligible risks" include "Applicants with these [c]haracteristics . . . [c]urrently unemployed, other than retired or disabled." Entry 37-9 at 6.

Moreover, Ron Temposky ("Temposky"), the vice President of Product Management for Defendant deposed that "[a]pplicants that [sic] are unemployed are ineligible risks" under Defendant's policies. Temposky Dep. at 8:18-25.

Johnson testified that although he does not recall every detail of his meeting with Plaintiff, it is his routine practice to ask insurance applicants the questions prompted by Defendant's online application process and to insert their responses into the application. Entry 37-15 at 4, Johnson Aff., Dec. 9, 2010, ¶ 6. Johnson states that: "After the application is completed, my practice is to go over the application to ensure that I have correctly filled-in the information provided to me by the applicant. I then print off a hardcopy of the application for the applicant to review and sign." *Id.* Johnson states that he followed this practice with Plaintiff and that the answers on the application came from Plaintiff. *Id.* However, at his deposition, Johnson stated that he did not specifically recall sitting down with Plaintiff and going through his insurance application. Entry 37-15, Johnson Dep., Feb 2, 2011, 9:6-10; 25:17-26:2 (Johnson: "The going over the questions specifically what you're talking about with Mr. Bennett, I do not remember directly going over all the questions with him. I remember him taking out the insurance."). Johnson states that Plaintiff appeared to be alert during the application process and appeared to be paying particular attention to the application. Johnson Aff., Dec. 9, 2010, ¶ 10. Johnson states that Plaintiff did not ask for his advice and that he did not offer any advice to Plaintiff regarding the type of insurance he should get or any of the provisions of the application. *Id.* ¶ 9.

Johnson does not remember asking Plaintiff about his employment status, but testified that he thought Plaintiff was employed when he sold Plaintiff insurance. Johnson Dep., Feb. 2, 2011, 25:19-26:2 (Q: "Okay so you don't recall asking Mr. Bennett specifically his employment status?"

4

. . . . Johnson: "I answer just like this, . . . I was assuming he was working."); 30:13 ("Well I thought he was employed, sir."); Aff. of Johnson ¶ 8 (Johnson believed at the time the application was completed that Plaintiff was employed). Johnson did not tell Plaintiff that he would not be able to obtain insurance if he was unemployed. Johnson Dep. at 30:20-25 ("Q: "Before they've answered the questions regarding employment, that if they are unemployed, then they're not going to get this insurance. Do you explain that to them ahead of time?" A: "No, sir.").

> Plaintiff deposed that Johnson did not ask him about his employment status, stating:
>
> A: "Well no, he didn't asked [sic] me was I unemployed. Not as I remember. I think he asked me was I retired, disability. And by me, I'm just having a conversation. I'm telling him I'm - - I'm not retired, I'm not on disability."
>
> . . . .
>
> Q: "But you don't remember him asking whether or not you were employed?"
>
> A: "No, I don't."

Pl. Dep., Dec. 9, 2010, 74:11-15, 74:21-23. Plaintiff testified that after Johnson finished completing Plaintiff's insurance application: "he said, 'Here, sign.' I signed the documents. And then he asked me for my money and said, 'You got insurance.' And I give [sic] my money, he give [sic] me my receipt." *Id.* 74:1-4. Plaintiff testified that he did not know Johnson before he met with him to obtain homeowners insurance. *Id.* 67:5-6.

## DISCUSSION

**I.    Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown by citing to the record "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.* Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material facts and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Tr. of Maryland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992).

## II.    Declaration that the Policy is *Void Ab Initio*

Defendant contends that the Policy should be declared *void ab initio* because: 1) Plaintiff intentionally misrepresented his employment status on his insurance application, 2) Defendant would not have issued the policy if it had known Plaintiff was unemployed when he applied for insurance, and 3) there is no genuine issue of material fact for a jury to decide. Entry 37-1 at 1. Plaintiff, however, contends that a question of fact exists with regard to whether the inaccurate representation of Plaintiff's employment status was an intentional misrepresentation by Plaintiff. Entry 38 at 2.[1]

In order to declare a policy void and avoid liability, Defendant must show by clear and convincing evidence that: 1) the statements complained of were untrue; 2) their falsity was known to the applicant; 3) they were material to the risk; 4) the insurer relied on the statements; and 5) the

---

[1] Plaintiff also argues that there is no causal connection between the loss and the misstated fact, which Plaintiff contends, prevents a declaration that the Policy was *void ab initio*. Entry 38 at 4. This contention is incorrect. In *Carroll v. Jackson Nat'l Life Ins. Co.*, 414 S.E.2d 777 (S.C. 1992), the Supreme Court of South Carolina adopted the majority rule that "there is no requirement that the loss be causally related to the material misrepresentation under a void insurance policy." *Id.* at 777.

statements were made with the intent to deceive and defraud the insurer. *Carroll v. Jackson Nat'l Life Ins. Co.*, 414 S.E.2d 777, 777-78 (S.C. 1992) (listing elements); *Smiley v Woodmen of the World Life Ins. Soc'y*, 154 S.E.2d 834 (S.C. 1967) (standard is clear and convincing evidence).

Plaintiff does not dispute that the representation on his insurance application that he was not unemployed is false. Entry 37-4 at 3; *see also* Entry 38 at 1. Nor does Plaintiff dispute that he knew he was unemployed. *See id.* Plaintiff also does not argue that the false information was not material to the risk being assumed by Defendant or that Defendant relied upon the false information. Therefore, the only issue for the court is whether the misrepresentation as to Plaintiff's employment status was made with the intent to deceive.

Defendant contends that the only reasonable conclusion that can be reached from the facts and circumstances of this case is that Plaintiff intended to deceive Defendant about his employment status to gain insurance coverage. Entry 37-1 at 10, 14. The court disagrees.

"[O]rdinarily whether a misstatement of fact in the application was made with the intent to deceive and defraud the insurer is a question for determination by the jury." *Arnold v. Life Ins. Co.*, 83 S.E.2d 553, 557 (S.C. 1954). "However, where the only reasonable inference warranted by the evidence is that the policy was procured by fraudulent misrepresentations," a court may grant summary judgment. *Id.*; *see also Floyd v. Ohio Gen. Ins. Co.*, 701 F. Supp. 1177, 1190 (D.S.C. 1988) ("Under South Carolina law, an intent to deceive may be inferred when there is no other reasonable or plausible explanation for the applicant's false representation.").

In *Winburn v. Minnesota Mutual Life Insurance Co.*, 201 S.E.2d 372 (S.C. 1973) the Supreme Court of South Carolina found that the policy at issue was procured by fraud on the part of the insured even though the applicant contended that a third party had filled out the application.

7

*Id.* at 374-76. The Supreme Court of South Carolina reasoned that the only reasonable inference from the facts of the case was that the applicant had intended to defraud the insurer because the applicant had ratified the application by signing it, and that there was no contention that the applicant had given true and correct answers to the questions. *Id.*

More recently, in *Primerica Life Insurance Co. v Ingram*, 616 S.E.2d 737 (S.C. Ct. App 2005), an insurance company sought to rescind a life insurance policy and rider based upon the applicant couple's failure to disclose the wife's diagnosed heart condition. *Id.* at 737-38. The wife died within two months after the policy and rider were issued due to her condition. *Id.* The husband, who sought coverage under the policy, did not dispute the existence of his wife's condition at the time they applied for insurance, or the fact that the condition was not disclosed in the application. *Id.* at 738. Instead, the husband argued that there was no intention to defraud the insurer because he and his wife had disclosed the condition to the insurer's agents and that it was the insurance agents who failed to include the information in the application. *Id.* The husband testified that he did not notice that his wife's condition was not disclosed. *Id.* at 739. The husband testified that he did not completely read over the application, but simply looked at the "yes" or "no" answers before signing; and that he believed his wife's condition has been disclosed because when the application asked whether his spouse *or dependants* had any medical conditions, the answer indicated that "yes" his spouse or dependant had a medical condition. *Id.* The husband therefore, testified that he did not know that the application only disclosed the medical condition of his son and not his wife. *Id.* Based upon this testimony, which the court viewed in the light most favorable to the couple, the South Carolina Court of Appeals concluded that a genuine issue of fact existed as to the couple's intent to defraud the insurer and denied summary judgment to the insurer. *Id.*

The within action is more akin to *Primerica* than *Winburn*. Viewing the facts in the light most favorable to Plaintiff, as the court must on summary judgment, Plaintiff testified that Johnson did not ask him about his employment status and that Plaintiff signed the application without reading it over. Plaintiff's failure to read an insurance application does indicate that Plaintiff must have intended to deceive Defendant. It is possible Plaintiff overlooked the false information, or just did not realize the application contained false information. The court concludes that there is a genuine issue of fact for determination by a jury as to whether or not Plaintiff intended to deceive Defendant with regard to his employment status. Defendant's motion for summary judgment on its counterclaim for a declaration that the Policy is *void ab initio* is denied. As a result of this ruling, the court declines to address Defendant's motion for summary judgment on Plaintiff's breach of contract claim as premature until the issue of Plaintiff's intent is resolved.

### III.    Bad Faith Refusal to Pay Benefits

Defendant contends that it acted in good faith and with reasonable cause in denying coverage and therefore, that Plaintiff's bad faith claim fails as a matter of law. Entry 37-1 at 15-16. The court disagrees.

A claim for bad faith refusal to pay benefits under a contract of insurance requires: 1) the existence of a mutually binding contract of insurance between the plaintiff and defendant; 2) refusal by the insurer to pay benefits due under the contract; 3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; 4) causing damage to the insured. *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 562 S.E.2d 659, 661 (S.C. Ct. App. 2002) (quoting *Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994)). "Under South Carolina law, an insurer acts in bad faith when there is no reasonable

basis to support the insurer's decision." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E.2d 455, 462 (2004) (citing *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996). However, if there is a reasonable ground for contesting a claim, there is no bad faith in the denial of the claim. *Mixson*,, 562 S.E.2d 659, 661 (S.C. Ct. App. 2002) (citing *Cock-N-Bull Steak House*, 466 S.E.2d at 730; *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (S.C. 1992)).

The court concludes that Plaintiff has put forth sufficient evidence to create a genuine issue of material fact with regard to this claim. The reason for this is that if a jury were to find that Plaintiff had no intent to deceive Defendant, it is possible that a jury could also find that Defendant was unreasonable in relying on the error of its own agent to deny coverage without investigating the circumstances surrounding the completion of Plaintiff's insurance application. Defendant's motion for summary judgment as to Plaintiff's bad faith claim is denied. [2] As a result, whether Plaintiff is entitled to attorney's fees and punitive damages will be determined after all of the evidence is taken on Plaintiff's bad faith claim. *See* S.C. Code Ann. § 38-59-40 (indicating that attorney's fees are appropriate if bad faith refusal to pay is found); *Howard v State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994) (punitive damages may be recovered only if the plaintiff proves the insurer's conduct was willful or in reckless disregard of his or her rights under the contract).

**IV.     Negligence through the Acts of Agents**

In the amended complaint, Plaintiff alleges that Defendant was negligent through the acts of

---

[2] Although the court ruled from the bench that Defendant's motion for summary judgment on Plaintiff's bad faith claim should be granted, the court has the power to change its ruling prior to judgment. *Williams v. Norfolk S. Ry. Co.*, 36 F.3d 1096 (Table), 1994 WL 532859, at *1 (4th Cir. Oct. 3, 1994) (citing *Jetero Constr. Co., Inc. v. S. Memphis Lumber Co.*, 531 F.2d 1348, 1351 (6th Cir. 1976)).

Johnson in: 1) failing to ask the Plaintiff appropriate questions to accurately complete the application for insurance; 2) failing to adequately explain the questions within the application; 3) failing to communicate to the Plaintiff any requirement that he be currently employed for the application to be approved and a policy issued; 4) placing its interest of earning a commission ahead of the Plaintiff's interest of protecting his home; and 5) failing to use the degree of care that an ordinarily prudent insurance agent would have used under the circumstances then and there prevailing. Entry 24 at 4.

Defendant argues that Plaintiff's claim fails as a matter of law because Johnson did not owe Plaintiff a duty to advise. Entry 37-1 at 18. Defendant also argues that an agent has no duty to discuss the terms of an insurance application with an insured before the carrier can deny coverage based on a material misrepresentation. Entry 40 at 8. Defendant contends that Johnson did not make any representations to Plaintiff that were incorrect or misleading and that because Johnson did not offer any advice or information to Plaintiff regarding his employment status, a duty of care never arose. Entry 40 at 11. In addition, Defendant argues that any negligence on the part of Johnson is irrelevant because Plaintiff had the opportunity to read the application before signing it and could have discovered the false information. Entry 40 at 12.

A plaintiff pursuing a negligence claim must demonstrate that 1) the defendant owed him a duty of care; 2) the defendant breached that duty by a negligent act or omission; and 3) he suffered damage as a proximate result of that breach. *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 780 (S.C. Ct. App. 2010) (citing *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (2000)). As a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so. *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C.

11

2005). However, an insurance agent does have a duty to use due care in the performance of his responsibilities, including handling an application with care. *Hinds v. United Ins. Co. of America*, 149 S.E.2d 771, 775 (S.C. 1966); *see also Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 296, 297 (S.C. 1996) (finding that an insurance agent has an inherent authority as well as the duty to clearly explain the terms and limitations of the insurer's products, and also indicating that there is a duty to properly complete applications for insurance).

Plaintiff testified that Johnson did not ask him whether or not he was employed. In addition, Johnson testified that he did not specifically remember what questions he asked Plaintiff and merely stated that it was his routine practice to ask insurance applicants all questions on the form and to go over it with them. Johnson also testified that he thought or assumed that Plaintiff was employed. Viewing the facts in the light most favorable to Plaintiff, the court finds that there is a genuine issue of material fact as to whether Johnson breached his duty to use due care in handling Plaintiff's insurance application.

## **CONCLUSION**

Defendant's motion for summary judgment (Entry 37) is **denied**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

July 14, 2011
Columbia, South Carolina

12